is 2024-30236 United States of America v. Roy Lee Jones Jr. We'll hear from Mr. Adams. Thank you, Your Honor. Good morning, Your Honors, and may it please the Court. Aaron Before the Court is Mr. Roy Lee Jones Jr., who for his first criminal conviction was sentenced to 17 and a half years in federal prison. After Mr. Jones' sentencing, the United States Sentencing Commission passed and made retroactive a sentencing guideline reduction for certain offenders, like Mr. Jones, who prior to their federal conviction had no criminal history. Below, both the government and Mr. Jones agreed not only that he was eligible for a reduction, but also that he deserved one. However, the District Court disagreed as to eligibility. The government has now, on appeal, done an about-face, and Mr. Jones is here seeking to avail himself of that reduction. Disposition of this case in Mr. Jones' favor requires this Court to make two findings. First, that the District Court correctly interpreted sentencing guideline 4C1.1A10 to require, in order to disqualify a defendant for relief, the defendant to both receive an aggravating role adjustment under guideline 3B1.1B and to have been engaged in a continuing criminal enterprise. And second, that the District Court then erred by finding, for the first time in this retroactivity petition, that Mr. Jones was engaged in that continuing criminal enterprise. If we were to hold that each of the two parts of U.S. Sentencing Guideline 4C1.1A10 is a separate requirement for relief, is there any way that Mr. Jones could still win here if we treat them as disjunctive, given that you do not dispute the District Court's application of the aggravating roles enhancement? Well, Your Honor, if the Court treats them as an or, there is no dispute that Mr. Jones received the aggravating role enhancement under 3B1.1 at sentencing. So he would fail under that reading. Okay. But I believe the District Court's ruling on the interpretation of the guideline as the District Court made it was correct, and that's because it followed a strict textual reading of that guideline as it was written. Simply put, that and means and. A defendant must satisfy both prongs of the 10th criterion, both prongs 1 and 2 to be disqualified. The error that the District Court committed in this case was for finding on the first time, for finding for the first time in this retroactivity petition that Mr. Jones engaged in a continuing criminal enterprise. And that finding was an error because it violated Supreme Court and Fifth Circuit precedent and also Guideline 1B1.10, all of which say that in determining whether a defendant is eligible for a reduced sentence under a retroactive amendment to the sentencing guidelines, the Court is only permitted to substitute the amended guideline provision, but it must, quote, leave all other guideline applications decisions unaffected. Similarly, this Court has long held that the original sentencing determinations cannot be re-litigated in a 3582C2 proceeding. That is a proceeding to amend the sentence for the guideline reduction. However, sua sponte, re-deciding a sentencing issue, is precisely what the District Court did. And it did so because nowhere in Mr. Jones's original pre-sentence report or sentencing was any mention made of a continuing criminal enterprise. There was no finding that Mr. Jones engaged in a continuing criminal enterprise. And indeed, under Richardson v. United States, to sustain a conviction for operating a CCE, a jury must find that the defendant committed three distinct violations that made up the continuing series. Each of those violations would be a separate element that was submitted to the jury. And under Richardson, an ongoing conspiracy is considered one violation. And here, while the pre-sentence report set forth detailed factual findings, it set forth only the existence of a single ongoing conspiracy between Jones and his co-defendants from February 2019 to July of 2020. So even if the issue could be re-litigated, which under Dillon and under sentencing guideline 1B1.10 it cannot be, the PSR did not provide the evidence that would support the District Court's finding that Jones had engaged in a CCE. Despite arguing below that Mr. Jones was in fact eligible for relief and deserving of a reduction, the government for the first time on appeal now argues that an aggravating role adjustment under 3B1.1 or a finding that Mr. Jones engaged in a continuing criminal enterprise alone disqualifies a defendant for relief. The government makes two main arguments. The first argument is that this case should be controlled by the Supreme Court's recent decision in Pulsever v. United States. In Pulsever, the Supreme Court considered the so-called federal safety valve statute, which is 18 United States Code section 3553F, and the Supreme Court considered the location of an and between that statute's penultimate and ultimate criteria. However, there are two reasons that Pulsever should not control this case. The first is that Pulsever dealt with a similarly drafted statute. The statute in that case, 3553F, and the guideline here were drafted differently, and they were drafted differently in one critical respect. The location of the and in Pulsever and the location of the and in this case are different. In Pulsever, the and was placed between two criteria, between criteria B and C, whereas here the and is placed within a single criteria. And in fact, if we look at the rest of the list of 10 criteria within 4C1.1a, the 10th criterion is the only one, which includes an and separating two separate requirements. And what this means, what this shows, is that the Sentencing Commission knew how to draft criteria separately. In fact, it did so in criterias 1 through 9. However, it chose not to do so for the 10th and final criterion, and that deliberate drafting decision should be given effect. The second reason Pulsever should not control this decision is that Pulsever can be distinguished from this case based on its reasoning. The Supreme Court in Pulsever was persuaded that the defendant's interpretation would lead to superfluous and absurd results. For example, in Pulsever, subparagraph A of that safety valve statute required defendants have not more than four criminal history points. That subparagraph would have been rendered completely superfluous under the defendant's reading in Pulsever because a defendant that had a three-point offense under subparagraph B and also a two-point offense under subparagraph C would always have more than four criminal history points. And so there would be no reason to have subparagraph A at all, and the Supreme Court was heavily persuaded by this reasoning. Additionally, the defendant's reading in that case would have led to absurd results, and that's because a defendant's eligibility for relief would not have corresponded with the seriousness of their criminal records. So, for example, under the defendant's reading in Pulsever, a defendant with several violent three-point offenses could still have gotten safety valve relief if they didn't have, for example, a two-point offense. And the Supreme Court said that's an absurd result that we cannot countenance. Now, the government argues here that such superfluity infects this guideline as well. It essentially says that there is no situation in which a defendant could meet both prongs simultaneously of section 10. Simply put, the government's wrong on that. As Mr. Jones illustrated in his reply brief, there are at least two very common situations in which a defendant could meet both prongs and thus be ineligible for relief. The first example is a defendant who's convicted of two statute, 21 United States Code, Section 841, and also convicted of one count of engaging in a continuing criminal enterprise under Section 848. Under the guidelines, each count of conviction would be subject to its own offense level calculation, and the guideline that produced the highest offense level would then be used. In this example, the defendant would receive the aggravating role adjustment under 3B1.01 for the substantive drug trafficking count. Now, for the CCE count, which is a violation of 21 United States Code, Section 848, the guideline for operating a continuing criminal enterprise would be used, which is 2D1.5. With that calculation, he wouldn't receive the aggravating role adjustment, because the CCE guideline directs that not to be used. But of course, it would have been used for the substantive drug trafficking charge. And so in that case, both criteria in 4C1.1A10 would be met, and it would be true regardless of which guideline produced the higher offense level. A second example, the same defendant as above, he's charged with both a substantive drug trafficking count under 841. He's also got the continuing criminal enterprise count under 848. But in this example, the defendant pleads guilty to only the substantive drug trafficking charge in exchange for dismissal of the CCE charge. In this case, because the defendant was not convicted under the continuing criminal enterprise statute, 21 United States Code, Section 848, the 2D1.5 CCE guideline would not apply. And instead, the drug trafficking guideline in 2D1.1 would be used. So for that guideline, the defendant would receive the aggravating role adjustment in 3B1.1. However, under the principles of relevant conduct in guideline 1B1.3, the pre-sentence report would still be required to detail the significant evidence that the defendant had engaged in a continuing criminal enterprise. That would all be included in the pre-sentence report as relevant conduct. So in this situation, a defendant would also still receive the 3B1.1 aggravating role adjustment. And the PSR would also set forth the evidence concerning the CCE. And the defendant would be properly found, again, to have received both the aggravating role adjustment and to have been engaged in a CCE. So the government's argument that there is no situation in which a defendant could meet both prongs is simply incorrect. The second main argument that the government makes is that the Sentencing Commission's recent decision to split the two prongs supports its reading of the guideline. And to that, I would answer with a simple adage. If it ain't broke, don't fix it. How about if it ain't clear, clarified? Well, I believe, Your Honor, that it would not have needed to be clarified if it supported the government's reading. I believe that the very fact that the Commission sought to amend A10 to break apart the two criteria into separate subsections is an acknowledgment by the Commission that the provision as written required proof of both criteria listed in A10 to disqualify a defendant. If the current text supported the government's reading and courts were uniformly lining up in favor of that reading, then there really would be no reason to make that change. Also, if the clarification were needed, that means there was at least an ambiguity as to the current interpretation, and that ambiguity should be resolved in Mr. Jones's favor. I'd like to make at least two final— Would you argue that? Have you argued that before? Your Honor, I'm not sure whether I argue that the ambiguity should be resolved in the defendant's favor in the briefing, but I believe it should be. And truthfully, I don't believe that the statute as written is ambiguous. I think that— We have a rule of lenity under criminal statutes. I don't know if we've ever heard of that in terms of the guidelines, but just an observation. Certainly. You know, I would argue that as written, the statute is not ambiguous, that it clearly was read correctly by the district court. And I think that the Sentencing Commission's decision—you know, the government certainly argues that its decision supports its reading, and I say, if it ain't broke, don't fix it. And it's an acknowledgement that it was not working—you know, it was working in the favor of defendants like Mr. Jones. All right, Counselor. I have two final points. You have no time, though. Oh, I'm sorry. You're right. I do. Thank you, Your Honor. May it please the Court. Forrest Phillips for the United States. The district court did not err in denying Mr. Jones' motion for a sentence reduction because Mr. Jones was categorically ineligible. He was ineligible on the basis of this 3B1.1 aggravating rule adjustment, standing alone. We're talking about the word and here today. Every tool of statutory interpretation that we've got advocates for a, call it disjunctive reading, call it an exclusionary set of conditions, but it all leads to, if one of these two things is met, the defendant is ineligible. Counsel, do you have any explanation for why the commission wrote it this way, the introduction for all the 10 subparts makes it clear all those are supposed to be satisfied, but then they group those two. They haven't grouped any others. Any, is there some commonality or why would they have put them together if it's not for the reasons your opposing counsel are saying, which is the alternatives? Yes, Your Honor. Use the word commonality. I think that's going on here, right? A CCE by definition folds in a aggravating rule adjustment, someone being a leader or manager organizer of that criminal enterprise. They're dealing with similar things. I think that . . . Are you saying none of the others are doing that? All of the others set forth a discrete category of defendant that's ineligible, whereas this one does the same in some respect, but it's two things that categorically cannot go together, but they're both dealing with defendants that are at the top of a totem pole of a conspiracy type venture. I think that if we take this out of this statute and look at a hypothetical that was banded about in the Palomare's safety valve litigation, a list of things with the final one being preceded by an and, I believe it was to lead a healthy lifestyle, one must not eat bad food, one must not lead a sedentary lifestyle, and one must not smoke and one must not drink. If you combine one must not smoke and one must not drink together, that makes even more sense, right? Imagine that list if those last two things are grouped together. No one would read that and think, well, if I do one but not the other, I'm leading a healthy lifestyle. It's the same . . . Well, many people do one but not the other and convince themselves they're leading a healthy lifestyle, but I have a question about whether or not you have an issue that you argue the other side of this in the district court. No, Your Honor, for a couple reasons. One is, just generally, we're in a fundamentally different position now, right? I think the invited error doctrine was referenced in the reply brief. The district court did not rely on anything the government did. It reached the opposite conclusion. So, you know, let's throw out the window. We are now tasked with defending . . . So, you believe it's your duty to defend the judgment of the district court? Yes, but especially in these 3582C motions, right, because a defendant's eligibility is essentially a jurisdictional precondition. If he is ineligible, he cannot be resentenced under this, and it's this court's job to decide whether he's eligible. Did the government actually brief and argue that it was not disjunctive or . . . I guess it's double negative there. Did you actually brief and argue the other side of this? Beneath the district court? No, Your Honor, it simply did not come up, and it was very new at the time, this guideline, but the district court caught his ineligibility. He was just too generous in reading why he was ineligible. The mere presence of the aggravating rule adjustment alone is enough, but . . . Did the government, I mean, did the district court commit any kind of procedural error in the way that it revisited some of this? So, if he did write, it would matter because he would still be ineligible, and so, you know, for that reason, there is no . . . I think the reason there is no procedural argument being made from the other side in terms of briefing is, you know, he's either eligible or he's not, and, you know, this court is in as good a position as the district court to make that decision. But what . . . the other argument about the Dillon and all of that, did you have a position on that? Yes, Your Honor, which is, I mean, I think really it's one to have your cake and eat it too, right? These retroactive defendants, when they're sentenced, you know, three, four, five years ago, there was no incentive for a district court to say, and also, even though this is completely irrelevant to the sentencing, I'm going to say that this constitutes a CCE. So, you know, ten years from now, just in case there's a guideline that incorporates that, we'll be covered. If you don't allow that kind of assessment in the context of this guideline, 3582, then, I mean, how would a CCE ever be found in this sort of unicorn scenario that we've got that makes this not entirely superfluous, if read to be conjunctive, where you've got a defendant that pled only to this substantive count, but at some point, the factual basis in the PSR, the language in the PSR, establishes he was involved in a much broader criminal enterprise, district court would have no incentive to make that finding back then until this guideline came out. So, even under that scenario, you're dealing with . . . Do you have any authority? That . . . I'm sorry. It's perfectly fine for the district court to revisit these things whenever new guidelines come out? Well, there's a general line of cases about retroactivity of guidelines that, unfortunately, it's not my brief, and I'd be happy to . . . Well, I'm not talking about whether they should operate retroactively. I'm talking about what the district court can consider when deciding whether to apply them. I think their argument on this point was that they weren't supposed to go back and the district court wasn't allowed to go back. Now, the district court could go back because the district court had extensive knowledge from the trial and everything, but I think the other argument is that he's not supposed to under these three cases that were cited. Yeah. And, you know . . . And that's why I'm asking you if you have a case to the contrary. I don't think it's going back, Your Honor. It's applying this new guideline which requires this sort of assessment. That would be my answer, that we don't need that case. I'm happy to provide one after this if it exists. You know, we can discuss that issue, brief it, but my position is he's not . . . he's applying the guideline which would require this kind of assessment if you read it conjunctively and say he needs this CCE too. The 3B.1.1 enhancement by itself is not enough. But, you know, it is enough for those statutory interpretation tools at play in Pultefer. They're all here and they're here to a greater extent. As far as the superfluousness, we've talked about it already. The guidelines categorically say if you are convicted of a CCE, you do not receive a 3B.1 aggravating rule enhancement. And, you know, that kind of knocks out the other scenario discussed where this might happen where both the enhancement and the CCE conviction appear in a PSR in terms of guideline calculations. But, of course, only one is going to be applied. Only one is going to be received by the defendant. So even under that scenario, this is superfluous. The other tool at play in the briefing we discussed the fact that if you read it this way, this condition 10, subcondition 10, anyone who is not a drug manager or supervisor would be able to skip over this because of the addition of that CCE language. So any defendant not separately disqualified from one of the other conditions, you know, could be the leader of an international cyber gang. It could be someone at the top of a Ponzi scheme or something would be able to skip right over this because even though they were clearly a leader organizer, they weren't involved in drug activity. And there's another absurdity I want to mention here and it relates to this new amendment, Amendment 831, that has now replaced 821 for defendants sentenced today going forward. Now, you know, we filed 28J on this notifying the court that this amendment had taken effect and the new version of the guideline, you know, broke this out. But as we sit here, the only retroactive designation in the policy statement, 1B, 1.10, is Amendment 821. So if this court interprets this not to be, you know, the clarifying amendment or not to, you know, require both rather than either, then you have a situation where defendants sentenced today are being sentenced under a version of the guideline that's plainly disjunctive, that plainly prohibits an individual based on either of these conditions, whereas defendants that are seeking relief through 3582C2 are using Amendment 821, which only now would apply in retroactive relief context. That violates just the fundamental premise of a C2 motion, is to put defendants on the same page as people being sentenced today. And, you know, like I said, the Sentencing Commission did not amend that policy statement because as you pointed out, Judge Southwick, 831 does nothing to change 821 other than to clarify. It is a technical amendment that resolves any even, you know, ability to discuss what we're discussing here today. Do you believe that lenity is properly before us? And if so, what is your response to that? You know, we have talked about lenity in the context of guidelines in the Vargas case, for example. Yeah, so I guess I got three reasons why it's not appropriate. One is it's waived, right? I don't think it was discussed significantly in the briefing. The other reason is the rule of lenity will only apply when you're left with this grievous ambiguity after every tool of statutory interpretation has been deployed to a stalemate. Here we have the opposite. We have every tool advocating for the government's reading. So you don't get to it. Well, let me ask you on the legal point, though. It's one way to say it's not very ambiguous. Is there such a principle that's been recognized that ambiguous guidelines that can be read in favor of defendant's position, that's what we should do? Not that I'm aware of, Your Honor. That's fine. I don't think we need to explore that. I just want to know if you . . . Yes. You know, I don't believe so. So we talked about the absurdities. We talked about the superfluousness of reading it the defendant's way. There's also this new amendment that, you know, the Sentencing Commission is quite clear what it intended with the previous one. You know, that is something that Congress reviews and approves through not objecting to. So I just . . . I don't think that there's any tool of statutory interpretation that would reach the defendant's position other than to say that is the word and, and and is capable of multiple meanings. You know, that's it. Unless the Court has any questions, I think I'll rest. Thank you. We have your argument. Chief Judge Elrod, Your Honor asked the government a very simple and direct question, which is whether the United States briefed essentially the same argument that I'm now making in the District Court below. Mr. Phillips said that they did not, and I would say that they did, in fact, and the record cited to that starts at page 2135 and it ends at page 2141. That is the, and it's titled this, the United States response agreeing to relief based on a zero-point amendment. They went through the law and they found below that Mr. Jones did qualify. Right. And finding error, though, doesn't work. So what can . . . is there something that you say you can say there's some reason that we can say, aha, you shouldn't have done that? Well, I think, I think the issue is, is that the government is, is, is making this argument, and, and they continue to make this argument, right, that the, somehow the tenth criterion is superfluous. And they're continuing to make this argument. I understand why they're making this argument, because that's what ultimately held the day in Pulsever, and that's what ultimately won the day in the other circuits that have addressed this issue. They have all relied on the same line of reasoning. And, you know, as we pointed out, that's just not the case. There is, there is not this superfluousness problem that is, that infected the Pulsever safety valve statute that similarly infects this guideline. It's just not the case. They are not the same. They're similar, but they're not the same. And the differences and the reason behind them matter. I believe that the other circuits, had they had the benefit of counsel briefing, would have come out differently on that issue. The last thing that I'll, I'll end with, Your Honors, is that not only did the government below believe that Mr. Jones was eligible for a reduction, they believed that he deserved one. And they believed that he deserved one that's evident in the recommendation that the government made to the court, that he receive a reduced sentence to 168 months, down from 210 months. What does that get you? The district court said no. It doesn't matter whether y'all agree or not. That's correct, Your Honor. I guess that goes to the, you're right, the district court did say no on eligibility. And it ultimately didn't reach the discretionary question, which is what I believe that they ought to now go back and, and address. So I, I believe that the correct outcome in this case would be for this court to remand it to the district court for the discretionary, the second prong, the discretionary using the 3553A factors. If Your Honors don't have any further questions. And thank you. We have your argument. We appreciate both arguments in this case. The, this concludes the sitting of the court.